```
UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF NEW YORK
```
_____

In re:

JOSEPH S. RINAUDO (aka Signature,
Gold, Inc., dba RE/MAX Gold, aka
Rinaudo Development, Inc., dba
Signature Management),

                           Debtor.

CASE NO. 08-20540

DECISION & ORDER

_____

**GENESEE REGIONAL BANK,**

                           Plaintiff,

               V.

**JOSEPH RINAUDO and SIGNATURE
GOLD, INC. (dba RE/MAX Gold
and Rinaudo Development, Inc.,
dba Signature Management),**

                           Defendants.

AP NO. 08-2047

_____

## BACKGROUND

On March 11, 2008, Joseph S. Rinaudo (the "Debtor") filed a petition initiating a Chapter 7 case. On the Schedules and Statements required to be filed by Section 521 and Rule 1007, the Debtor indicated that he was indebted to Genesee Regional Bank ("Genesee") in the amount of $115,000.00 (the "Genesee Indebtedness"), based upon his guaranty of a loan that Genesee made to Signature Gold, Inc. ("Signature Gold"), which he indicated was

also guaranteed by Rinaudo Development, Inc. ("Development") and Mary T. Rinaudo ("Mary Rinaudo").

On June 17, 2008, Genesee commenced an Adversary Proceeding against the Debtor, which requested that the Court determine that: (1) the Genesee Indebtedness was nondischargeable pursuant to Section 523; and (2) the Debtor's discharge should be denied pursuant to Section 727.

The Complaint in the Adversary Proceeding alleged that: (1) Signature Gold was a corporation solely owned by the Debtor, which did business under the assumed name of RE/MAX Gold; (2) Development was owned equally by the Debtor, Mary Rinaudo and the Debtor's father, Salvatore Rinaudo; (3) on or about September 18, 2006, Signature Gold executed a Note and Security Agreement in favor of Genesee, which evidenced the Genesee Indebtedness, and guaranties of the Indebtedness were delivered to Genesee, that were purportedly executed by the Debtor, Development, Mary Rinaudo and Salvatore Rinaudo; (4) Signature Gold defaulted on its loan from Genesee, and at the time of the filing of the Adversary Proceeding, the Genesee Indebtedness was $101,269.25 plus interest and late charges; (5) on April 2, 2008, after the Debtor filed his bankruptcy petition, Genesee commenced an action in the New York State Supreme Court, Monroe County (the "State Court Action"), against Salvatore Rinaudo on his personal guaranty of the Genesee

**Page 2**

Indebtedness (the "Disputed Guaranty"); (6) in an April 19, 2008 Verified Answer in the State Court Action, Salvatore Rinaudo asserted that his signature on the Disputed Guaranty was a forgery; (7) upon information and belief, the Debtor delivered the Disputed Guaranty to Genesee, and he represented that: (a) it had been executed by Salvatore Rinaudo; and (b) he had the authority to deliver the Disputed Guaranty to Genesee; (8) the Disputed Guaranty was a condition precedent to Genesee making the loan to Signature Gold; (9) the misrepresentations of the Debtor with regard to the Disputed Guaranty, upon which Genesee relied, warranted the Court making a determination that the Debtor's discharge of the Genesee Indebtedness should be denied because of fraud, pursuant to Section 523(a)(2)(A); (10) Genesee had a perfected security interest in all of the personal property of Signature Gold; (11) with the exception of property valued at $10,650.00 that Genesee was able to repossess after Signature Gold's default, the Debtor disposed of Signature Gold's personal property and used the proceeds for his personal use, rather than turning them over to Genesee, as required by the loan documents, so that to the extent of the value of the property disposed of, the Genesee Indebtedness should be determined to be nondischargeable pursuant to Section 523(a)(6); and (12) the Debtor's discharge should be denied, pursuant to Section 727, because the Debtor made false oaths with respect to his

**Page 3**

relationship with Sean Phillips and transactions involving 466 Bennington Drive, Rochester, New York (the "Bennington Drive Property"), 155 California Drive, Rochester, New York (the "California Drive Property") and Development.

The Defendant interposed an Answer to the Complaint in the Adversary Proceeding, which alleged that: (1) the transfer of the California Drive Property from Development to Salvatore Rinaudo was done without his knowledge or consent; (2) the personal property of Signature Gold that the Debtor sold only generated proceeds of $2,500.00, and the Debtor retained those funds because he believed that Genesee was oversecured at the time; and (3) "[t]hat the personal guarantee of Salvatore Rinaudo was delivered to Defendant Joseph Rinaudo, who did in fact deliver the same to the Plaintiff at the time of closing the loan referenced in Plaintiff's Complaint," and "[t]hat it was commonplace between Salvatore Rinaudo, Mary Rinaudo and Joseph Rinaudo, in order to facilitate business transactions, for them each to sign the others name to various business documents."

On May 20, 2009 and July 17, 2009, the Court conducted a Trial (the "Trial") in the Adversary Proceeding, at which the Debtor, Salvatore Rinaudo, Victoria Damon, a loan officer at Genesee at the time it made the loan to Signature Gold, and Paul Kaiser, a bank officer at Genesee, testified.

Page 4

## DISCUSSION

### I. Section 523(a)(2)(A)

#### A. Statute and Case Law

A creditor seeking to have a debt declared nondischargeable under Section 523(a)(2)(A)[1] for a false representation must prove by a preponderance of the evidence that: (1) the debtor made a representation; (2) knowing the representation was false; (3) with the intent to deceive the creditor; (4) upon which the creditor had actually and justifiably relied; and (5) the creditor sustained a loss as a proximate result of its reliance upon the representation. See *Bank of America v. Jarczyk*, 268 B.R. 17, 21 (Bankr. W.D.N.Y. 2001).

---

[1] Section 523(a)(2)(A) provides that:

(a) A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—

    (2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—

        (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition[.]

11 U.S.C. § 523 (2009).

B. **Summary of Decision**

This Court finds that the Genesee Indebtedness is nondischargeable, pursuant to Section 523(a)(2)(A), for the following reasons:

1. The Debtor was the sole owner of Signature Gold and the RE/MAX real estate sales franchise that it operated, so that the loan made by Genesee to Signature Gold was for his individual benefit. The Debtor's mother and father, Mary and Salvatore Rinaudo, and Development, by pledging its assets, were mere accommodation-makers for the Debtor's benefit.

2. As the actual and intended beneficiary of the Genesee loan to Signature Gold, the Debtor, in this Court's view, was ultimately responsible for insuring that all of the conditions precedent to the loan, including the execution and delivery of a valid and enforceable guaranty of Salvatore Rinaudo, were met. Given that the required individual guarantors, other than himself, were his parents, and he knew Salvatore Rinaudo was not at the closing, the Debtor had an obligation, as the owner of Signature Gold, not to accept the Genesee loan proceeds unless and until he was certain that the guaranty of Salvatore Rinaudo was validly executed and delivered.

3. In his Answer, the Debtor admitted that the Disputed Guaranty was delivered to him, which this Court finds credible, even

Page 6

though his additional admission that he delivered it to Genesee at the time of the closing of the loan proved to be mistaken, as confirmed by the testimony of Victoria Damon who conducted the loan closing for Genesee.

4. The Disputed Guaranty, which the Debtor admitted in his Answer was delivered to him, was ultimately delivered to Genesee. That fulfilled all of the conditions precedent, so Genesee made the loan to Signature Gold. The Debtor cannot, having admitted that the Disputed Guaranty was delivered to him, be permitted, for the purposes of Section 523(a)(2)(A), to engage in a shell game with Genesee and the Court regarding the execution and delivery of the Disputed Guaranty, since he was ultimately responsible for insuring that the conditions precedent to the loan to Signature Gold were met.

5. At Trial, the Debtor testified that he was mistaken with respect to the allegations regarding the Disputed Guaranty in his Answer, and although the testimony of Victoria Damon confirms that he was mistaken with respect to delivering the Disputed Guaranty to Genesee at the closing, this Court does not find his testimony credible to the extent that his testimony was also intended to indicate that the Disputed Guaranty was not delivered to him or that he did not otherwise cause it directly or indirectly to be delivered to Genesee.

Page 7

6.  This Court believes that the testimony of Salvatore Rinaudo that he did not execute and deliver the Disputed Guaranty was credible. Also, the Court finds credible the testimony of Salvatore Rinaudo that he was unaware of the Disputed Guaranty, and, therefore, no one could have had authority from Salvatore Rinaudo to execute the Disputed Guaranty on his behalf.

7.  This Court notes that in his Schedules, the Debtor did not indicate that the Genesee Indebtedness was guaranteed by Salvatore Rinaudo, but he did indicate that it was guaranteed by him, Development and Mary Rinaudo.

8.  Although this Court is not an expert in handwriting analysis, the signature of Salvatore Rinaudo on the Disputed Guaranty does not appear to be the same signature as set forth on other documents admitted into evidence at Trial, including the Deed of California Drive from Development to Salvatore Rinaudo, admittedly executed on behalf of Development by Salvatore Rinaudo (Defendant's Exhibit 6 at Trial - not admitted but offered, and discussed in the Debtor's post-Trial submission). However, as set forth later in this Decision & Order, this Court has left that issue open for the State Court Action and only includes this as an additional basis to find the testimony of Salvatore Rinaudo credible.

**Page 8**

9. The Debtor's Answer also stated that, "it was commonplace between Salvatore Rinaudo, Mary Rinaudo and Joseph Rinaudo, in order to facilitate business transactions, for them each to sign the others name to various business documents," which to this Court raises the question as to whether it may have been Mary Rinaudo who executed and delivered the Disputed Guaranty to Genesee. In that regard, the Debtor, who was responsible for making sure that all of the conditions precedent to the making of the loan to Signature Gold were met, failed to call Mary Rinaudo at Trial so that the Court could hear her testimony, and judge her credibility, as to whether she may have executed and delivered the Disputed Guaranty.

10. This Court believes that the testimony of Victoria Damon and Paul Kaiser was credible as to the reliance of Genesee on the Guaranty of Salvatore Rinaudo as a necessary condition to the loan to Signature Gold, because the credit of the Debtor itself was not sufficient.

11. The fact that Genesee may not have had a written policy in place regarding loan documents not executed at closing, or did not fully comply with informal policies, does not change the false representation made by the Debtor with regard to the Disputed Guaranty or result in a finding that Genesee did not justifiably rely on the Disputed Guaranty.

Page 9

12. Based upon all of the facts, circumstances and evidence presented, in this Court's view, the Debtor is not the honest but unfortunate debtor entitled to a discharge with regard to the Genesee Indebtedness.

13. In summary: (a) the Debtor, by not insuring that a valid guaranty was executed and delivered to Genesee by Salvatore Rinaudo before accepting the loan proceeds, made a misrepresentation to Genesee in connection with the Signature Gold loan; (b) the Debtor knew or should have known, since he was in possession of the Disputed Guaranty and given his personal and business relationships with Salvatore Rinaudo and his knowledge that Salvatore did not attend the loan closing, that no valid guaranty was executed and delivered to Genesee; (c) the Debtor demonstrated an intent to deceive by accepting the loan proceeds without confirming the existence and delivery of a valid guaranty by Salvatore Rinaudo; (d) Genesee justifiably relied on the Disputed Guaranty; and (e) Genesee has suffered a loss by not having the guaranty of Salvatore Rinaudo for the loan to Signature Gold that it would not have made without the guaranty.

By reason of the foregoing, this Court concludes that Genesee was defrauded by the actions or inactions of the Debtor, having relied on the Disputed Guaranty to make the loan to Signature Gold,

since the Debtor did not, at a minimum, insure that a valid required guaranty of Salvatore Rinaudo was executed and delivered to Genesee, and the Debtor may otherwise have been actively and knowingly engaged in delivering or causing to be delivered a forged and unauthorized guaranty to Genesee.

Nevertheless: (1) neither party attempted at Trial to prove who may have executed and delivered the Disputed Guaranty; and (2) the validity of the Disputed Guaranty remains at issue in the State Court Action.

It is possible in the State Court Action that: (1) a handwriting expert may be called whose testimony results in the State Court finding that the Disputed Guaranty was in fact executed by Salvatore Rinaudo, and thus is valid; or (2) evidence may be offered that results in the State Court finding that Mary Rinaudo executed and delivered the Disputed Guaranty with authority, and thus is valid. Therefore, should the State Court find that the Disputed Guaranty is valid for these or other any other reasons, this Court's finding of the nondischargeability of the Genesee Indebtedness, pursuant to Section 523(a)(2)(A), shall be vacated.

## II. Section 523(a)(6)

Since this Court has determined that the entire Genesee Indebtedness in nondischargeable pursuant to Section 523(a)(2)(A),

**BK. 08-20540**
**AP. 08-2047**

it is not necessary for it to address the Section 523(a)(6) cause of action. However, the Court retains the right to make such a determination should that become necessary.

**III. Section 727**

The Court finds that Genesee has failed in all respects to meet its burdens of proof under Sections 727(a)(2)(A) and 727(a)(4)(A), so that the Debtor's overall discharge is not denied, even though the Genesee Indebtedness has been determined to be nondischargeable.

**CONCLUSION**

The Genesee Indebtedness is determined to be nondischargeable.

**IT IS SO ORDERED.**

                                          **/s/**
                                 **HON. JOHN C. NINFO, II**
                                 **U.S. BANKRUPTCY JUDGE**

**Dated: October 27, 2009**